Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8126 | DATE | September 16, 2003 |
| CASE TITLE | Dana Malone   v   Janice Shallcross, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss plaintiff's claim against Griffin and Bounds is denied. Defendants' motion to dismiss the instant action for lack of timeliness is denied.

■ for further details see order on reverse

| X | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | SEP 19 2003 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | 31 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANA MALONE, )
)
        Plaintiff, )
) No. 02 C 8126
v. )
) Judge Robert W. Gettleman
JANICE SHALLCROSS, in her official capacity )
as Superintendent of the Illinois Youth Center- )
St. Charles, Illinois Department of Corrections; )
NANCY BOUNDS, in her official capacity as )
Personnel Manager of the Illinois Department of )
Corrections; WILLIAM GRIFFIN, in his official )
capacity as Employee Services Administrator, )
Illinois Department of Corrections, )
)
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dana Malone filed an amended complaint against defendants Janice Shallcross ("Shallcross"), Superintendent of the IDOC Youth Center, Nancy Bounds ("Bounds"), IDOC Personnel Manager, and William Griffin ("Griffin"), IDOC Employee Services Administrator, alleging violations of Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title V of the ADA, 42 U.S.C. § 12203. Defendants have filed motions to dismiss plaintiff's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) asserting the following: 1) plaintiff's ADA claims against Griffin and Bounds in their official capacity are redundant to the ADA claim alleged against Shallcross; and 2) all claims brought pursuant to the ADA that arose before September 21, 2001, are barred by the 300 day statute of limitations and should be dismissed with prejudice. For the reasons stated below, defendants' motion to dismiss plaintiff's claims against Griffin and Bounds is denied. Defendants' motion to dismiss the instant

action for lack of timeliness is also denied, with the condition that plaintiff may proceed only on properly pled incidents of discrimination occurring subsequent to September 21, 2001.

## FACTS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, the court accepts the factual allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiff was hired by the St. Charles, Illinois Youth Center ("Center") – Illinois Department of Corrections ("IDOC") in 1984. Immediately prior to 1993, plaintiff was working as a Youth Supervisor II at a youth residence within the Center.

In May 1993, plaintiff suffered an injury to her knee while breaking up a fight at the Center. She was immediately placed on leave of absence by Jerry Butler, then-Superintendent of the Center. On August 10, 1993, plaintiff was allegedly placed on a "Non-Service Connected Medical Leave" for which she did not receive benefits.

Plaintiff underwent surgery to repair her knee in August 1993. According to plaintiff, Butler informed her that she must return to work or face termination in September 1993, despite his awareness that plaintiff had not yet recovered from the surgery. When plaintiff was cleared to work in January 1994, subject to permanent restrictions, she alleges that IDOC did not allow her to return to work at the Center and she was forced to remain on leave with no explanation for many years.

Between January 1994 and early 2000, plaintiff claims to have made numerous efforts to become reinstated as a Youth Supervisor II and was initially told that the Center had lost her file, and was later repeatedly told that there were no open positions available.

In early 2000, plaintiff's attorney confirmed, through the State Retirement System, that plaintiff was still employed by IDOC and was on a "non-service connected" leave of absence. Through her attorney, plaintiff then requested a job with IDOC with or without accommodation for her disability. The Central Management Services for IDOC allegedly took the position that plaintiff could either arrange to resume her duties as Youth Supervisor II if she were no longer disabled or, if she was unable to resume her duties, apply for participation in IDOC's Alternative Employment Program ("AEP").

In May 2000, plaintiff informed then-Superintendent Levandowski that she wanted to return to work at the Center either in her former position or some other position that reasonably accommodated her disability. According to plaintiff, Levandowski did not approve plaintiff's return to work and failed to engage in discussions with plaintiff regarding the possibility of providing any reasonable accommodation.

In June 2000, IDOC's Employee Service Administrator, Patricia Lackman, concluded that plaintiff suffered from a permanent disability that prevented her from acting as a Youth Supervisor II in any capacity. According to plaintiff, Lackman did not make an effort to discuss her disability and whether it would, in fact, prevent plaintiff from acting as a Youth Supervisor II. Lackman then referred plaintiff to the IDOC Personnel Manager, Nancy Bounds, for placement in the AEP.

In November 2000, plaintiff was informed that she was not eligible to participate in the AEP because of her disability. In January 2001, Lackman informed plaintiff that she would either have

to resign or be terminated. In early 2001, plaintiff, through her attorney, contacted IDOC and as a result, in October 2001, was placed in the AEP, though plaintiff's employment status remained inactive.

Plaintiff alleges that she made repeated requests to IDOC for reinstatement during 2001 but was not offered a job or returned to active employment status. Plaintiff further alleges that IDOC did not discuss reasonable accommodations with plaintiff during this time period.

In March 2002, plaintiff applied for a Residential Counselor's position. She was not hired, and plaintiff alleges that an individual in IDOC's personnel department told her she was ineligible for the position because she was on the inactive list and IDOC had classified her as "non-occupational" when she should have been classified as "occupational."

On July 19, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights. Plaintiff received a right-to-sue letter from the EEOC dated September 10, 2002. On November 8, 2002, plaintiff filed a complaint against IDOC alleging discrimination for the period January 3, 1994, through July 19, 2002. Following the filing of defendants' motion to dismiss her complaint on grounds of sovereign immunity, plaintiff filed an amended complaint naming Shallcross, Bounds, and Griffin as defendants in their official capacities.

## DISCUSSION

In their reply brief, defendants argue for the first time that plaintiff's claims against Griffin and Bounds in their official capacities are redundant to plaintiff's claims against Shallcross, IDOC's Superintendent, and must be dismissed pursuant to *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). As plaintiff correctly points out, however, *Jungels* involved claims pled

against a city and its officials, which are not protected by sovereign immunity. Further, rather than dismissing the city officials from the case, the *Jungels* court noted that suing both the local government and the official "makes no practical difference" because "the city is liable for the official actions of its senior policy making official."

In the instant case, in response to defendants' motion to dismiss plaintiff's first complaint against IDOC on grounds of sovereign immunity, plaintiff filed an amended complaint naming the appropriate IDOC employees in their official capacities. This does not contravene *Jungels*, and thus defendants' motion to dismiss Griffin and Bounds is denied.[1]

Defendants next argue that plaintiff's complaint must be dismissed as untimely because the alleged distinct acts upon which she bases her claims occurred more than 300 days prior to the filing of her EEOC discrimination charge against IDOC. In the alternative, defendants argue all claims based on IDOC's or defendants' actions prior to September, 21, 2001, should be dismissed and plaintiff should not receive any remedy for alleged violations of the ADA occurring before that date.

The ADA adopts the enforcement procedures governing Title VII actions, including filing procedures and timing requirements. *See* 42 U.S.C. § 12117(a); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). Thus, under the ADA, as under Title VII, a claimant in Illinois must file a charge with the EEOC within 300 days of the occurrence of the alleged unlawful employment practice. *Id.*; *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000); *Christner v. American Eagle Airlines, Inc.*, 2003 WL 21267105, at *4 (N.D.Ill. May 30, 2003). The

---

[1] In addition, as plaintiff points out, the request to dismiss Griffin and Bounds was not made until it was included in defendants' reply brief. As such, it was waived. *See Budget Rent-A-Car Corp. v. Crescent Ace Hardware, et al.*, 2003 WL 21673932, at *5 n. 7 (N.D.Ill. Jan. 16, 2003).

300-day limit begins running when the defendant takes the action that injures the plaintiff and when the plaintiff knows he was injured, not when he determines that the injury was unlawful. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).

Defendants contend that any decision by IDOC to deny plaintiff an accommodation in 1993 or failure to return plaintiff to an active status occurred before September 21, 2001, the date marking the 300-day period preceding the filing of plaintiff's EEOC charge. Defendants further contend that plaintiff's EEOC charge contains only two instances of alleged discrimination within the 300-day period prior to the filing of the charge: 1) being placed on the "Alternative Employment" list in October 2001; and 2) being told she was ineligible for a Residential Counselor's position in March 2002 because IDOC had kept her on the "inactive" list. In response, plaintiff argues that she has alleged facts supporting a "continuing violation" that suffice to overcome defendants' statute of limitations defense (at least until the factual record is further developed).

"The continuing violation theory allows a plaintiff to reach back to get relief for an act of discrimination that occurred outside the statute of limitations by linking it as one continuous act with a discriminatory act that took place within the limitations period." *Hale v. Renee-Baker*, 2002 WL 1613765, *3 (N.D. Ill. July 19, 2002), quoting *Place v. Abbott Laboratories*, 215 F.3d 803, 807 (7th Cir. 2002). For the purposes of the limitation period, courts treat such a combination as one continuous act that ends within the limitations period. *Selan v. Kiley*, 969 F.2d 560 (7th Cir. 1992).

The question in the instant case, then, is whether defendants' acts were "related closely enough to constitute a continuing violation" or "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Selan*, 969 F.2d at 565, quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983). The Fifth Circuit has suggested factors to

consider in making this determination, the most important of which is the degree of permanence. *Id.* In other words, "Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Id.* The other two factors to consider are the frequency of the alleged acts and whether all of the acts involve the same subject matter. *Id.*

In the instant case, defendants' alleged refusal to accommodate plaintiff's disability persisted for more than eight years. As early as 1994, IDOC repeatedly rebuffed plaintiff's attempts to be reinstated as a Youth Supervisor II, telling her that her file was lost or that no positions were available. In May 2000, plaintiff's request for reinstatement or a reasonable accommodation was allegedly ignored by then-Superintendent Levandowski. Then, in January 2001, Lackman allegedly told plaintiff that she would have to resign or be terminated. Although these acts may not have had the "permanence" of being fired or demoted, by January 2001, at the latest, defendants' consistent refusal to accommodate plaintiff's alleged disability and/or reinstate her to "active" status certainly should have triggered plaintiff's "awareness of and duty to assert" her rights. The continuing violation doctrine, therefore, is inapplicable to the instant case. *See also Filopovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 397 (7th Cir. 1999) (quoting *Selan*, 969 F.2d at 567) ("[A] two-year gap between allegedly discriminatory incidents 'weighs heavily against finding a continuing violation.'").[2]

---

[2]Plaintiff further contends that the 300-day limit should be tolled under theories of equitable tolling and equitable estoppel. The court notes, however, that plaintiff has not alleged that defendants were "responsible for creating the false impression of achieved or imminent resolution" of her discrimination claim, or that she was otherwise prevented from obtaining vital
(continued...)

This conclusion does not compel dismissal of plaintiff's amended complaint, however. Defendants acknowledge that, (1) plaintiff was placed on the AEP list in October 2001, and (2) in March 2002, plaintiff applied for another position, which was denied to her because she was on an "inactive" list. Plaintiff's July 2002 EEOC charge timely raised these incidents, which are certainly adequate to state a claim under Fed. R. Civ. P. 12(b)(6). Further, recognizing that factual allegations relating to incidents prior to September 21, 2001, may be relevant to plaintiff's timely-filed claims, the court declines to order plaintiff to strike any of the factual allegations in her complaint.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss plaintiff's claim against Griffin and Bounds is denied. Defendants' motion to dismiss the instant action for lack of timeliness is also denied, with the condition that plaintiff may proceed only on properly pled incidents of discrimination occurring subsequent to September 21, 2001.

**ENTER:** **September 16, 2003**

Robert W. Gettleman
United States District Judge

---

[2](...continued)
information in support of her discrimination claim, after January 2001. See Frazier v. Delco Electronics Corp., 263 F.3d 663, 665 (7th Cir. 2001). Thus, the court declines to toll the statute of limitations on equitable grounds.

8