# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8126 | DATE | Nov. 2, 2004 |
| CASE TITLE | Dana Malone | v | Janice Shallcross, etc., et al |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DO**June 14, 2004**CKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Hearing |
| (5) | ☐ | Status hearing set for |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motion for summary judgment is granted and defendants' motion to strike is denied as moot. Status hearing date of 11/18/04 is stricken. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| X | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 08 2004 | 73 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | GDS | courtroom deputy's initials | 2004 NOV -5 AM 11:23 U.S. DISTRICT COURT | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANA MALONE, )
)
Plaintiff, )
) No. 02 C 8126
v. )
) Judge Robert W. Gettleman
JANICE SHALLCROSS, in her official capacity )
as Superintendent of the Illinois Youth Center- )
St. Charles, Illinois Department of Corrections; )
NANCY BOUNDS, in her official capacity as )
Personnel Manager of the Illinois Department of )
Corrections; WILLIAM GRIFFIN, in his official )
capacity as Employee Services Administrator, )
Illinois Department of Corrections, )
)
Defendants. )

**DOCKETED NOV - 8 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff Dana Malone filed an amended complaint against defendants Janice Shallcross ("Shallcross"), Superintendent of the Illinois Department of Corrections ("IDOC") Youth Center, Nancy Bounds ("Bounds"), IDOC Personnel Manager, and William Griffin ("Griffin")[1], IDOC Employee Services Administrator, alleging violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Title V of the ADA, 42 U.S.C. § 12203. Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and a motion to strike portions of plaintiff's responses to defendants' L.R. 56.1(a) statement of facts.

For the reasons stated below, defendants' motion for summary judgment is granted and defendants' motion to strike is denied as moot.

---

[1] Plaintiff incorrectly sued Billie Griffin as William Griffin.

## FACTS[2]

Plaintiff was hired by the IDOC's St. Charles, Illinois Youth Center ("Center") in 1984. Immediately prior to 1993, plaintiff was working as a Youth Supervisor II ("YS II") at a youth residence within the Center. In May 1993, plaintiff suffered an injury to her knee while breaking up a fight at the Center. In July 1993, plaintiff returned to work following a paid leave of absence, but re-injured her knee shortly thereafter. On August 10, 1993, plaintiff was placed on a "Non-Service Connected Medical Leave," for which she received no benefits.

Plaintiff underwent surgery to repair her knee in August 1993. Plaintiff was cleared to work in January 1994, subject to permanent restrictions, including that she could not directly supervise youth. Plaintiff alleges that IDOC did not allow her to return to work at the Center in January 1994, but rather forced her to remain on leave with no explanation for many years. Between January 1994 and early 2000, plaintiff made numerous efforts to be reinstated as a YS II in a capacity that did not require the direct supervision of youth. During this period, plaintiff was referred to several other positions with state agencies by the Alternative Employment Program ("AEP"). AEP is a State of Illinois program designed to find vacant positions for state employees, including those with permanent disabilities who can no longer perform their original jobs. Plaintiff applied to or expressed interest in some of these positions, but was never hired. Several of the positions required a skills test that plaintiff did not pass. Plaintiff was not allowed to participate in AEP beginning some time in 2000 through June 2001, after her physician mistakenly indicated on a form that plaintiff's disability was temporary rather than permanent.

---

[2] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute.

Since January 1994, plaintiff has never returned to active duty in any capacity at the Center or at any position with the state, and has remained on an unpaid medical leave of absence.

## PROCEDURAL HISTORY

On July 19, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights. Plaintiff received a right-to-sue letter from the EEOC dated September 10, 2002. On May 9, 2003, plaintiff filed an amended complaint, alleging discrimination for the period January 1994 through 2002. Defendants filed a motion to dismiss plaintiff's amended complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting the following: (1) plaintiff's ADA claims against Griffin and Bounds in their official capacity are redundant to the ADA claims alleged against Shallcross; and (2) all claims brought pursuant to the ADA that arose before September 21, 2001, are barred by the 300-day statute of limitations.

In a memorandum and order dated September 19, 2003, this court denied defendants' motions to dismiss. Malone v. Shallcross, No. 02 C 8126, 2003 WL 22176058 (N.D.Ill. Sep. 19, 2003). The court, however, held that plaintiff "may proceed only on properly pled incidents of discrimination occurring subsequent to September 21, 2001." Further, the court specifically noted that plaintiff alleged in her EEOC charge two incidents that occurred within the time period: (1) plaintiff was placed on the AEP list in October 2001; and (2) plaintiff was told she was ineligible for a residential counselor's position in March 2002 because IDOC had kept her on the "inactive" list.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## DISCUSSION

Initially, the court notes that defendants do not include a statement of facts in their legal memoranda, electing to leave it to the court to sift through their L.R. 56.1 statement to determine the proper sequence of events. As the court has previously admonished, omitting complete factual recitations in the parties' briefs constitutes an impermissible and transparent attempt to avoid the page limitations prescribed by L.R. 7.1. Cleveland v. Prairie State College, 208 F. Supp. 2d 967, 972-73 (N.D.Ill. 2002). This practice places an undue burden on the court and its staff to sift through mounds of paper to ferret out the material facts at issue. Defendants' failure to fulfill their obligations is particularly regrettable in this case because the court already

determined that many events described in plaintiff's amended complaint are time-barred, and the timing of events is therefore of special significance.[3]

Both parties devote the bulk of their lengthy 56.1 statements and legal memoranda to incidents that occurred several years before the 300-day period began, without connecting the earlier incidents to events within the actionable time period. In particular, the parties concentrate on whether plaintiff is a "qualified individual" under the ADA and therefore entitled to accommodations that would allow her to be a YS II, how to define the essential functions of the YS II position, and whether several of IDOC's policies violated the ADA. Neither party, however, cites to an incident within the 300-day period that is related to plaintiff's attempts to return to her YS II position. Rather, all of the alleged incidents within the actionable period are related to plaintiff's opportunity and efforts to secure a different position with a state agency, not plaintiff's effort to return to the YS II job. The court, therefore, need not decide whether plaintiff is a "qualified individual" or determine the essential functions of the YS II position. Instead, the only question before the court is whether plaintiff has raised a triable issue of fact concerning any of the incidents within the 300-day period.

When considering a motion to dismiss, the court accepts the actual allegations of the complaint as true. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). When considering a motion for summary judgment, however, the

---

[3]The court notes that defendants' 56.1 statement was very difficult to read because defendants attempted to bind their motion for summary judgment, 56.1 statement, and hundreds of pages of exhibits into a single volume. The result was a filing more than five inches thick, which is hard to lift and even harder to read. The court's difficulties were exacerbated by double-sided deposition transcripts that were copied and bound in such a manner that half of the pages were upside-down.

5

court considers the moving papers and affidavits. See Celotex, 477 U.S. at 322; Unterreiner, 8 F.3d at 1209. Despite the flaws in defendants' memoranda, defendants offer evidence that both incidents specifically identified by this court as falling within the actionable period, based on plaintiff's first amended complaint, actually occurred prior to the 300-day statute of limitations period. First, plaintiff testified at her deposition that she applied for the residential counselor position in March 2001, not March 2002, as her EEOC charge stated. Plaintiff's testimony is corroborated by a letter plaintiff wrote to the Center dated May 31, 2001, confirming that she had recently applied for the position as of that date. Second, plaintiff admitted in her supplemental L.R. 56.1 statement of facts that she was re-enrolled in AEP in June 2001, not October 2001 as stated in her EEOC charge. It is uncontroverted, therefore, that both incidents identified by the court in its earlier memorandum and order are time-barred. The court thus turns its attention to other incidents alleged to have occurred within the 300-day time period, which all relate to plaintiff's attempts to secure a position other than as a YS II.

In certain cases, the ADA requires employers to transfer a person with a disability to another open position for which she is qualified. See 42 U.S.C. § 12111(9)(B). To be "qualified," an individual must "satisfy the legitimate prerequisites for that alternative position" and "be able to perform the essential functions of that position." Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 676 (7th Cir. 1998) (citations omitted). As the Dalton court noted, "Nothing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." Id. at 678. Defendants contend that even if they had an obligation to attempt to transfer plaintiff, plaintiff's participation in AEP, including the notice she received of job

6

vacancies, was sufficient to satisfy this obligation. Plaintiff responds that enrollment in AEP was not a reasonable accommodation and discriminatory for several reasons, including that plaintiff never secured a new position and that plaintiff's participation in AEP was plagued by administrative problems.

It is undisputed that plaintiff received notice from AEP of several vacant positions during the 300-day period and that plaintiff also applied for at least one position with a state agency outside of AEP's referral process. Plaintiff was not hired for any of these jobs. Plaintiff, however, does not dispute defendants' explanations for not hiring plaintiff, including that she was unable to pass the required skills test for several of the positions, one position was filled by a member of the bargaining unit, and one position required direct contact with youth, which plaintiff admitted she is unable to perform. Instead, plaintiff cites to only one incident within the 300-day period related to AEP and plaintiff's attempts to secure another job. On April 8, 2002, through AEP, plaintiff was offered a position as an office assistant in the mail room of the Illinois Department of Employment Security. Plaintiff did not accept the position because, she claims, she could not handle the walking required by the position. Plaintiff, however, does not explain how being offered a position that she determined she was not able to fill was an act of disability discrimination, and plaintiff cites to no authority in support of her argument.

To demonstrate that a failure to offer a transfer or reassignment violates the ADA, a plaintiff has the burden of showing that a vacant position exists for which she was qualified. McCreary v. Libbey-Owens-Ford, Co., 132 F.3d 1159, 1165 (7th Cir. 1997). Plaintiff does not identify any vacant positions for which she was qualified but was denied for an impermissible reason. Plaintiff does not identify any other incidents within the 300-day period prior to filing

7

her EEOC charge. Plaintiff, therefore, fails to create a triable issue of fact as to any incidents of discrimination that allegedly occurred within the actionable time period. Accordingly, defendants' motion for summary judgement is granted.

Defendants' motion to strike 68 paragraphs of plaintiff's 56.1 responses is denied as moot because defendants' motion for summary judgment is granted without reference to the challenged paragraphs. It appears that many of plaintiff's responses contravene L.R. 56.1 because they include additional facts, are non-responsive, or are otherwise improper. The court, however, need not reach the issue because the court grants summary judgment based on admissions by plaintiff that are not affected by the motion to strike.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted and defendants' motion to strike is denied as moot.

**ENTER:** **November 2, 2004**

_____
**Robert W. Gettleman**
**United States District Judge**